# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SALLY STEELE-BROWN,

      Plaintiff,                            Case No. 15-11817

vs.                                         Hon. Gerald E. Rosen

PHIL STODDARD, in his official
capacity as Director of the Michigan
Office of Retirement Services,

      Defendant.

_____/

## OPINION AND ORDER REGARDING
## DEFENDANT'S MOTION TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ June 15, 2016 _____

PRESENT:    Honorable Gerald E. Rosen
                   United States District Judge

## I. INTRODUCTION

Plaintiff Sally Steele-Brown, a recently retired public schoolteacher,

commenced this action in this Court on May 20, 2015, asserting federal civil rights

claims under 42 U.S.C. § 1983 and a state-law claim of gross negligence against

Defendant Phil Stoddard, a state official who serves as the director of the

Michigan Office of Retirement Services ("MORS"). In support of these claims,

Plaintiff alleges that MORS, under Defendant's direction, sent her misleading communications that led her to inadvertently opt out of employer-provided retiree health insurance, and to instead elect a personal healthcare fund that was grossly underfunded at the time of her retirement. This Court's subject matter jurisdiction rests upon Plaintiff's assertion of claims arising under federal law. *See* 28 U.S.C. § 1331.

In lieu of answering Plaintiff's complaint, Defendant has filed a July 17, 2015 motion in which he seeks the dismissal of each of Plaintiff's claims on various grounds. In particular, Defendant argues (i) that Plaintiff has failed to state viable due process or takings claims under 42 U.S.C. § 1983, (ii) that Plaintiff's federal § 1983 claims for money damages and her state-law claim of gross negligence are defeated by the immunity conferred under the Eleventh Amendment to the U.S. Constitution, (iii) that Plaintiff's claims are barred by the doctrine of *res judicata,* in light of the parallel proceedings instituted by Plaintiff before an administrative law judge and in the Michigan courts, and (iv) that, in the event it is determined that Plaintiff's claims are not subject to dismissal, the Court nonetheless should abstain from addressing these claims while Plaintiff's state court challenge remains pending.

On November 17, 2015, Plaintiff filed a response in opposition to

2

Defendant's motion to dismiss.  Having reviewed the parties' briefs in support of and in opposition to Defendant's motion, as well as the accompanying exhibits and the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are adequately presented in these written submissions, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendant's motion "on the briefs."  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  This opinion sets forth the Court's rulings on this motion.

## II.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Prior to her retirement on July 1, 2013, Plaintiff Sally Steele-Brown was employed as a public school teacher for 31 years.  Shortly before Plaintiff retired, the Michigan Legislature amended the state law governing the retirement benefits granted to public school employees.  Under this 2012 amendment, employees hired on or after September 4, 2012 were no longer eligible upon their retirement for health insurance coverage that was paid for in part by their employer.  *See* Mich. Comp. Laws § 38.1391a(1).  Instead, these employees could contribute to a so-called "Tier 2" account, with limited matching contributions from their employer, that they could draw upon to pay the health care expenses they incurred after their retirement.  *See* Mich. Comp. Laws §§ 38.1391a(1),(2).  Public school

3

employees who, like Plaintiff, were hired prior to September 4, 2012 could elect to either (i) maintain their existing employer-provided retiree health insurance, with the employer paying 80 percent of the monthly premiums for this coverage, or (ii) opt out of this health insurance coverage and instead open a "Tier 2" account that would be used to pay health care expenses upon the employee's retirement. *See* Mich. Comp. Laws §§ 38.1391, 38.1391a(5).

In September of 2012, the Michigan Office of Retirement Services ("MORS"), under the direction of Defendant Phil Stoddard, sent correspondence to Plaintiff and other public school employees advising them of the options available to them under the recent amendments to the law governing their retirement benefits. According to Plaintiff's complaint, the mailings sent by MORS were misleading in various respects, and neither this correspondence nor the MORS website provided the notice and complete information needed by Plaintiff to make an appropriate selection among the retiree health care options offered under Michigan law. In particular, Plaintiff alleges that the mailings she received from MORS (i) indicated that she was compelled to select one of the two options referenced in the correspondence, when in fact she "did not have to elect either and could simply maintain [her existing] retiree health insurance," (ii) misstated the deadline by which she had to act, (iii) used "technical jargon" that

4

operated to "obfuscate[] the decision" faced by Plaintiff, (iv) omitted any mention that if she selected the "personal healthcare fund" option referenced in the MORS correspondence, she "would forfeit or waive her entitlement to employer-provided retiree health insurance and would have to go on the open market to purchase insurance," (v) failed to advise Plaintiff that the "personal healthcare fund" was "more appropriate for a young employee who is s[ufficiently] far away from retirement to build [up] such account or has access to retiree health insurance through an alternative source," and (vi) lacked notice of Plaintiff's opportunity to revoke her selection of a "personal healthcare fund" within a specified time after making this election.  (Complaint at ¶¶ 7, 9, 13-15.)

Upon receiving these mailings from MORS, Plaintiff "unknowingly" elected to surrender her existing retiree health insurance coverage, and to instead begin contributing to a personal healthcare fund.  (*Id.* at ¶ 16.)  Plaintiff alleges that MORS did not send her notice of this election until February 26, 2013, after the statutory period for rescinding this choice had already expired, and that this notice used "healthcare jargon" rather than "plain English" to characterize her selection.  (*Id.* at ¶ 17.)  Thus, Plaintiff alleges that she did not become aware of her "inadvertent[]" surrender of her retiree health insurance coverage until August 2, 2013, a month after she retired.  (*Id.* at ¶ 18.)

5

Upon learning that she had inadvertently chosen a personal healthcare fund over continued retiree health insurance, Plaintiff "immediately contacted [M]ORS to change her selection," but this request was denied. (*Id.*) As a result, Plaintiff's personal healthcare fund is significantly underfunded, with "a value of approximately $1,000 upon her retirement," and she "has been forced to purchase health care insurance on the open market for a premium amount significantly higher than what she would have had to pay" if she had retained the retiree health insurance coverage that was largely paid for by her employer. (*Id.* at ¶¶ 19-20.)

In an effort to rectify this situation, Plaintiff first requested a hearing before an administrative law judge ("ALJ") as provided for under Michigan law. Following this hearing, the ALJ recommended that the Public School Employees' Retirement Board (the "Board") deny Plaintiff's administrative appeal, finding that MORS had "acted in accordance with the law" when it denied Plaintiff's request to revoke her selection of a personal healthcare fund. (*See* Defendants' Motion, Ex. A, Admin. Record at 40-41.) Plaintiff filed objections to the ALJ's proposed findings, but the Board adopted the ALJ's decision in an order dated November 13, 2014. (*See id.* at 3.)

As noted in a letter advising Plaintiff of the Board's unfavorable decision, (*see id.* at 2), Plaintiff had a right under Michigan law to appeal the Board's order

6

to the Michigan courts, and she elected to do so.  By order dated June 24, 2015, the Ingham County Circuit Court ruled in Plaintiff's favor, directing the Public School Employees' Retirement System to (i) reinstate Plaintiff's coverage under the retiree health insurance plan subsidized by her former employer, and (ii) reimburse Plaintiff for any additional expenses she incurred as a result of the discontinuation of this coverage and Plaintiff's purchase of substitute health insurance.  (*See* Defendant's Motion, Ex. C, Circuit Court 6/24/2015 Order.)  The Public School Employees' Retirement System filed an application with the Michigan Court of Appeals for leave to appeal the circuit court's decision, and the state appellate court granted this application on October 7, 2015.  This appeal has been briefed and remains pending before the Court of Appeals.

After Plaintiff instituted her state court challenge to the Board's decision, but before the Michigan circuit court ruled in her favor, Plaintiff commenced the present suit in this Court on May 20, 2015, alleging that Defendant Stoddard, acting in his official capacity as the director of MORS, violated her federal constitutional right to due process and effected an unconstitutional taking of her property interest in retiree health insurance by administering a "thoroughly confusing" program that led Plaintiff to unknowingly surrender her right to employer-subsidized health insurance upon her retirement.  (Complaint at ¶¶ 25,

7

31.)  Plaintiff also has asserted a state-law claim of gross negligence against

Defendant Stoddard.  As relief, Plaintiff seeks (i) a declaration that her

constitutional and statutory rights were violated, (ii) an order enjoining any further

such violations and requiring that Defendant establish appropriate procedures for

administering retiree healthcare benefits, (iii) compensatory damages for the losses

suffered by Plaintiff as a result of Defendant's unlawful actions, and (iv) an award

of attorney fees and costs.

## III.  ANALYSIS

### A.    The Standards Governing Defendant's Motion

Through the present motion, Defendant seeks the dismissal under Fed. R.

Civ. P. 12(b)(1) and 12(b)(6) of each of the claims asserted in Plaintiff's

complaint.  When considering a motion brought under Rule 12(b)(1) mounting a

facial challenge to the existence of subject matter jurisdiction, the Court "takes the

allegations in the complaint as true," inquiring whether these allegations establish

a basis for the exercise of subject matter jurisdiction.  *Gentek Building Products,*

*Inc. v. Steel Peel Litigation Trust,* 491 F.3d 320, 330 (6th Cir. 2007).  Yet,

"conclusory allegations or legal conclusions masquerading as factual conclusions

will not suffice" to withstand a properly supported Rule 12(b)(1) motion to

dismiss.  *O'Bryan v. Holy See,* 556 F.3d 361, 376 (6th Cir. 2009) (internal

8

quotation marks and citation omitted).

To the extent that Defendant contends that certain of Plaintiff's claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim, the Court must construe the complaint in a light most favorable to Plaintiff and accept all well-pleaded factual allegations as true. *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). In addition, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

**B.   Plaintiff Has Failed to Plead a Viable Substantive or Procedural Due Process Claim Arising from Defendant's Determination That Plaintiff Surrendered Her Right to Employer-Subsidized Health Insurance upon Her Retirement.**

In the first count of her complaint, Plaintiff alleges that Defendant violated her right to due process, as guaranteed under the U.S. Constitution, by depriving her of an alleged property interest in employer-subsidized health insurance upon her retirement as a public school teacher.  Although it is not evident from the face of Plaintiff's complaint whether she means to pursue a substantive or procedural due process claim, she contends in her response to Defendant's present motion that the allegations of her complaint would support either of these two theories of recovery.  Defendant now challenges the viability of this claim, arguing that it is insufficiently pled without regard to the due process theory Plaintiff seeks to pursue.  As discussed below, the Court agrees that the allegations of Plaintiff's complaint fail as a matter of law to establish either a substantive or procedural due process violation.

**1.   Substantive Due Process**

Turning first to Plaintiff's claim of a substantive due process violation, such

10

claims arise from the Supreme Court's recognition that the Due Process Clause of the Fourteenth Amendment guarantees "more than fair process" and "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis,* 523 U.S. 833, 840, 118 S. Ct. 1708, 1713 (1998) (internal quotation marks and citations omitted). The parties here agree that to state a substantive due process claim, Plaintiff must allege that the Defendant state official acted in a manner that "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis,* 523 U.S. at 847, 118 S. Ct. at 1717 (internal quotation marks and citation omitted); *see also Bowers v. City of Flint,* 325 F.3d 758, 766 (6th Cir. 2003) (explaining that where the plaintiff's complaint "does not allege the violation of a fundamental right," a substantive due process claim "must be based on behavior that shocks the conscience" (internal quotation marks and citation omitted)).

In arguing that Plaintiff has failed to allege the requisite conscience-shocking behavior, Defendant points to the Sixth Circuit's repeated unwillingness to find that a government official's misconduct meets this standard absent the official's use or threatened use of physical force. In *Braley v. City of Pontiac,* 906 F.2d 220, 226 (6th Cir. 1990), for example, the Sixth Circuit opined that it was

11

"problematic" to "[a]pply[] the 'shock the conscience' test in an area other than excessive force," and the court "doubt[ed] the utility of such a standard outside the realm of physical abuse." The court has reiterated this view in a number of subsequent rulings. *See, e.g., Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469, 1478 (6th Cir. 1993) ("[B]ecause the present case does not concern physical abuse, we are reluctant to apply the 'shock the conscience' standard, and decline to do so." (citation and footnote omitted)); *Cassady v. Tackett,* 938 F.2d 693, 698 (6th Cir. 1991) ("Since the present case, like *Braley,* does not concern physical abuse, we are reluctant to apply the 'shock the conscience' standard." (footnote omitted)); *Puckett v. Lexington-Fayette Urban County Gov't,* No. 13-5898, 566 F. App'x 462, 472 (6th Cir. May 21, 2014) ("Generally, the 'shocks the conscience' strain of successful substantive due process claims is recognized in the exclusive context of cases involving physical abuse." (internal quotation marks and citations omitted)); *Choate's Air Conditioning & Heating, Inc. v. Light, Gas & Water Division of the City of Memphis,* No. 00-5399, 16 F. App'x 323, 329 (6th Cir. June 22, 2001) (observing that the Sixth Circuit recognizes "shock the conscience" claims "in the exclusive context of cases involving physical abuse").

This Court likewise has invoked *Braley* and its progeny to dismiss

12

substantive due process claims that, like Plaintiff's claim here, rested upon alleged deprivations of the plaintiffs' property by government officials. In *Kawecki v. County of Macomb,* Nos. 04-70907, 05–73498, 2008 WL 205241, at *1 (E.D. Mich. Jan. 24, 2008), *aff'd sub nom., Birkholz v. Mial,* Nos. 08-1239, 08-1269, 312 F. App'x 752 (Feb. 3, 2009), the plaintiffs alleged that the defendant governmental entities and court-appointed officials mismanaged and misappropriated funds belonging to the plaintiffs and held in conservatorships established by a state probate court. The Court found that the plaintiffs' claims of substantive due process violations were foreclosed by the law of this Circuit:

> To be sure, the Court shares Plaintiffs' view that the misconduct allegedly engaged in by Defendants here is deeply troubling, and might even be said to "shock the conscience" in a colloquial sense. As a moral and ethical matter, the Court is dismayed by the notion that government officials would abuse their position of authority by misappropriating property that was entrusted to them for safekeeping. Worse yet, the property belonged to individuals who could not look out for themselves, and thus were uniquely dependent upon these court-appointed officials to preserve their estates and act in their best interests. Nonetheless, in light of clear Sixth Circuit precedent declining to extend the "shocks the conscience" standard beyond cases involving physical abuse, this Court finds that the property deprivations alleged by Plaintiffs in the present cases cannot sustain their substantive due process claims.

*Kawecki,* 2008 WL 205241, at *25. The Sixth Circuit affirmed this ruling, explaining that the plaintiffs had "cite[d] no authority for the award of damages on

13

a substantive due process theory for governmental action that neither threatens nor causes physical injury." *Birkholz,* 312 F. App'x at 752.

In her response to Defendant's present motion, Plaintiff does not even acknowledge this body of Sixth Circuit law, much less endeavor to distinguish it. Rather, she simply asserts, without citation to any supporting authority, that Defendant acted in a conscience-shocking manner by establishing a "confusing website" with "obscure jargon" that led her to unwittingly surrender her entitlement to employer-subsidized retiree health insurance, and by "stubborn[ly] refus[ing] to allow Plaintiff to correct an obvious mistake" in her election of retiree healthcare benefits.  (Plaintiff's Response Br. at 14.)  Yet, even assuming that Plaintiff lost her retiree health insurance as a result of Defendant's deliberate misconduct, as opposed to negligence or carelessness in a state agency's communication of the healthcare benefit options available to Plaintiff and other public school employees upon their retirement, this would not serve to distinguish the allegations here from the facts addressed by this Court in *Kawecki.*  In that case, after all, the plaintiffs charged that the defendant government officials had intentionally misappropriated property that had been entrusted to them for safekeeping, but this Court held (and the Sixth Circuit affirmed) that these allegations of deliberate property deprivations could not sustain a § 1983 claim

14

under a substantive due process theory.  In light of this Court's ruling in *Kawecki,*
as well as the Sixth Circuit precedents on which it relies, it follows that Plaintiff
has failed to plead a viable substantive due process claim.

### 2.    Procedural Due Process

Alternatively, Plaintiff suggests that the first count of her complaint should
be construed as advancing a procedural due process theory of recovery.  This
theory rests on the "procedural component" of the Fourteenth Amendment's Due
Process Clause, which imposes "the requirement that the government provide a
fair procedure when depriving someone of life, liberty, or property." *Daily*
*Services, LLC v. Valentino,* 756 F.3d 893, 904 (6th Cir. 2014) (internal quotation
marks and citations omitted).  "To establish a procedural due process claim, a
plaintiff must show that (1) [she] had a life, liberty, or property interest protected
by the Due Process Clause; (2) [she] was deprived of this protected interest; and
(3) the state did not afford [her] adequate procedural rights." *Daily Services,* 756
F.3d at 904.  Although the parties debate whether Plaintiff has identified a
property interest that would support her claim of a procedural due process
violation, the Court will assume, for present purposes, that Plaintiff has
sufficiently alleged the first two elements of a procedural due process claim, and
will focus exclusively on the question whether the state provided constitutionally

15

adequate process in connection with the property deprivation alleged by Plaintiff.

In arguing that Plaintiff has failed to plead this element of a procedural due process claim, Defendant points to the administrative and judicial avenues that were available to Plaintiff, and that she in fact pursued, in order to challenge the loss of her employer-subsidized retiree health insurance.  Specifically, upon learning that she had inadvertently surrendered this health insurance benefit, Plaintiff requested a hearing before an ALJ, and then filed objections with the Public School Employees' Retirement Board challenging the ALJ's unfavorable decision.  When this administrative process failed to provide the desired relief, Plaintiff commenced an action in state court and secured a ruling in her favor, under which the Public School Employees' Retirement System was ordered to restore Plaintiff's employer-subsidized retiree health insurance coverage and reimburse Plaintiff for the expenses she incurred as a result of her loss of this coverage and her purchase of substitute health insurance.[1]  Thus, not only did the State of Michigan provide procedures through which Plaintiff could challenge the loss of her retiree health insurance, but she has successfully invoked these procedures to redress this alleged deprivation of  property and regain her retiree

---

[1]As noted earlier, the Public School Employees' Retirement System has appealed this ruling, and this appeal remains pending before the Michigan Court of Appeals.

16

insurance benefits.  In Defendant's view, this opportunity to be heard defeats Plaintiff's claim of a procedural due process violation.  *See Parratt v. Taylor,* 451 U.S. 527, 540, 101 S. Ct. 1908, 1915 (1981) (emphasizing that "[t]he fundamental requirement of due process is the opportunity to be heard").

In an effort to avoid this result, Plaintiff tersely asserts that she was entitled to a "pre-termination hearing" before Defendant deprived her of her claimed property interest in employer-subsidized retiree health insurance.  (Plaintiff's Response Br. at 15.)  She questions, in other words, "[w]hat process [wa]s due" under federal procedural due process law in connection with the loss of her retiree health insurance benefits, and this inquiry, in turn, "depends upon whether the deprivation of property occurs pursuant to an established state procedure or results from a random, unauthorized act of a state employee."  *Walsh v. Cuyahoga County,* 424 F.3d 510, 513 (6th Cir. 2005) (internal quotation marks and citation omitted).  Unfortunately, Plaintiff offers no discussion or analysis whatsoever in support of her claim that a pre-termination hearing was required under the circumstances presented here.  This bare, undeveloped assertion operates as a waiver of Plaintiff's contention that she was entitled to a pre-termination hearing. *See Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir. 2005).

In any event, the Court's own inquiry leads to the conclusion that a pre-

17

termination hearing was not feasible in this case, and hence was not required. Plaintiff's due process claim rests upon allegations that Defendant sent correspondence to Plaintiff and other public school employees that misrepresented the health care options available to them upon their retirement. According to Plaintiff, this correspondence failed in various respects to accurately inform public school employees of the ramifications of the 2012 amendments to the Michigan law governing their retirement benefits. Specifically, Defendant's mailings allegedly (i) advised Plaintiff and other recipients that they must choose between retiree health insurance and a so-called "Tier 2" health care expense account created under the 2012 legislation, when in fact the pertinent Michigan statute provided that employees in Plaintiff's position who failed to make an election would maintain their existing retiree health insurance coverage, *see* Mich. Comp. Laws § 38.1391a(6); (ii) misstated the statutory deadline of January 9, 2013 by which an election had to be made, *see* Mich. Comp. Laws § 38.1391a(5); (iii) used terminology that differed from the language of the statute, "to the point that a reasonable person could not distinguish what was being elected," (Complaint at ¶ 11), and (iv) failed to advise Plaintiff and the other recipients of a "statutory revocation period" within which they could change their elections, (*id.* at ¶¶ 16-17).

18

In essence, then, Plaintiff charges Defendant with a due process violation arising from his alleged failure to properly implement the Michigan statutory scheme under which public school employees may select the health care coverage they will receive upon their retirement.  As stated in Plaintiff's complaint, the program created by Defendant for administering the health care benefits available to public school retirees under Michigan law "is so thoroughly confusing and without legal definition" that Plaintiff and other employees "were unable to decipher what exactly they were 'electing'" under this program.  (Complaint at ¶ 25.)  The due process violation, in other words, arises not from the Michigan statutory scheme that governs retirement benefits for  public school employees, but instead from Defendant's implementation of this scheme in a manner that led Plaintiff to unknowingly surrender her entitlement to employer-subsidized retiree health insurance.

Under comparable circumstances, where an alleged procedural due process violation rests upon a government official's deviation from, rather than adherence to, established state law or procedures, the Sixth Circuit has held that a post-deprivation hearing suffices to meet the dictates of the Due Process Clause.  In *Daily Services,* 756 F.3d at 896, for example, the plaintiff temporary employment agency brought suit against "various employees of the Ohio Bureau of Workers'

Compensation after the Bureau filed a series of judgments and liens against the [plaintiff] company in violation of Ohio's statutory and administrative procedures." Because the plaintiff was not challenging "established state procedures" governing the filing of judgments and liens, but instead alleged that Bureau workers deviated from these procedures in a manner that was "unpredictable or 'random' from the state's perspective," the court reasoned that it was not "foreseeable to the state that its employees would not follow state law," and that it therefore was impracticable for the state to implement pre-deprivation procedures to protect against this risk of noncompliance with the law. *Daily Services,* 756 F.3d at 908-09. In accordance with the Supreme Court's ruling in *Parratt,* 451 U.S. at 541-43, 101 S. Ct. at 1916-17, and its progeny, the Sixth Circuit held that the post-deprivation remedies available to the plaintiff company under Ohio law were "all the process that is due, simply because they are the only remedies the State could be expected to provide." *Daily Services,* 756 F.3d at 909-10 (internal quotation marks and citation omitted).

Similarly, in *Walsh,* 424 F.3d at 512, the plaintiff civil service employee was abruptly discharged when her supervisor instructed her at the conclusion of a performance review meeting to "clean out [her] desk" and submit a letter of resignation. The Sixth Circuit found it "clear" that the supervisor "was not acting

20

pursuant to an 'established state procedure'" by terminating the plaintiff's employment in this fashion, where the state agency for which the plaintiff worked had an "established disciplinary procedure" that called for a "written request for disciplinary action, a pre-disciplinary conference, and . . . an order of removal" before an employee could be discharged. *Walsh,* 424 F.3d at 513-14. Accordingly, because the termination of the plaintiff's employment was a product of the random and unauthorized act of her supervisor, the court held that "an adequate post-deprivation remedy satisfie[d] [the plaintiff's] right to due process of law." 424 F.3d at 514; *see also Fields v. Benningfield,* No. 13-5316, 544 F. App'x 626, 629 (6th Cir. Nov. 6, 2013) (explaining that "[w]hen a person is deprived of his property because state agents failed to follow a state procedure, . . . due process is satisfied if a means of challenging the deprivation afterwards remains available").

Viewing Plaintiff's allegations here against the backdrop of these precedents, the Court fails to see how the State of Michigan could have provided pre-deprivation procedures to protect against Plaintiff's inadvertent and unknowing election of a personal healthcare account rather than employer-subsidized retiree health insurance. Under the statutory scheme that granted public school employees the opportunity to make this election, various safeguards

21

were put in place to ensure that employees were aware of their options and had sufficient time to make a knowledgeable decision, but Plaintiff alleges that the program created by Defendant to implement the statutory scheme lacked these procedural safeguards.  Just as in *Daily Services,* it would likewise be impractical here for the State to offer procedural protection against the unanticipated risk that a state official such as Defendant might issue communications that misled public school employees in their selection of retiree healthcare coverage.  Certainly, Plaintiff has not suggested what sort of pre-deprivation procedures the State might have provided to overcome Defendant's allegedly misleading communications and other alleged deviations from the statutory scheme governing healthcare coverage for public school retirees.  Rather, the State could only be expected to provide post-deprivation remedies in the event that an employee was not properly advised of the healthcare options available to her upon her retirement and the process for selecting among these options.  Because the State of Michigan has provided these post-deprivation remedies, in the form of both administrative and judicial avenues of appeal, and because Plaintiff has not alleged or argued that these post-deprivation remedies are inadequate,[2] the Court finds that Plaintiff has failed to

---

[2]It would be difficult for Plaintiff to make this claim, where her pursuit of these post-deprivation remedies has resulted in a state court ruling in her favor that seemingly redresses her injuries.

plead a viable claim that her procedural due process rights were violated.

**C.      Plaintiff's Claim of an Unconstitutional Taking Is Barred by Eleventh Amendment Immunity.**

In the second count of her complaint, Plaintiff alleges that the loss of her employer-subsidized retiree health insurance amounts to an unconstitutional taking of her property interest in this insurance.  As discussed below, however, the Court finds that this claim is barred by the immunity conferred upon the State of Michigan under the Eleventh Amendment to the U.S. Constitution.

As the Supreme Court has explained, "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court."  *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S. Ct. 955, 962 (2000).  Moreover, to the extent that the Eleventh Amendment immunizes a state from a federal court suit, this immunity extends as well to claims in the suit that are brought "against state officials sued in their official capacity for money damages."  *Ernst v. Rising,* 427 F.3d 351, 358 (6th Cir. 2005).  This follows readily from the principle that "an official capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity" for which the official serves as an agent. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985); *see also*

*Cady v. Arenac County,* 574 F.3d 334, 342 (6th Cir. 2009) (noting that "a lawsuit against an officer in his official capacity and against the governmental entity [for which he serves] . . . are functionally the same and should therefore be subjected to the same analysis"). Consequently, because each of Plaintiff's claims has been brought against Defendant Stoddard solely in his official capacity as the director of a state agency, the Michigan Office of Retirement Services, the same Eleventh Amendment immunity that would bar a claim if brought against the State of Michigan would likewise preclude Plaintiff from pursuing this claim against Defendant Stoddard, at least to the extent that Plaintiff seeks a monetary recovery.[3]

In *DLX, Inc. v. Kentucky,* 381 F.3d 511, 526-28 (6th Cir. 2004), the Sixth Circuit held that the plaintiff's federal takings claims against the Commonwealth of Kentucky, a Kentucky state agency, and a state official sued in his official capacity were barred by Eleventh Amendment immunity. In so ruling, the court observed that a "federal-court suit alleging a taking seeks not just compensation *per se* but rather damages for the unconstitutional denial of such compensation."

---

[3]As Plaintiff points out in her response to Defendant's motion, this rule extends only to claims for money damages. Under the Supreme Court's ruling in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441 (1908), Eleventh Amendment immunity does not bar Plaintiff from seeking prospective injunctive or declaratory relief against Defendant Stoddard for actions taken in his official capacity that violate federal law. *See Cady,* 574 F.3d at 344; *Ernst,* 427 F.3d at 358.

*DLX,* 381 F.3d at 527 (internal quotation marks and citation omitted).  In light of the inherently compensatory nature of the relief sought through a federal takings claim, the court reasoned that such a claim, whether asserted directly against a state or against a state official sued in his official capacity, could not be saved from Eleventh Amendment immunity by resort to *Ex parte Young.  See DLX,* 381 F.3d at 527; *see also Hutto v. South Carolina Retirement System,* 773 F.3d 536, 553 (4th Cir. 2014) (observing that "every other court of appeals to have decided the question has held that the Takings Clause does not override the Eleventh Amendment" (collecting cases, including the Sixth Circuit's decision in *DLX*)).  It follows under *DLX* that the Eleventh Amendment immunity granted to the State of Michigan dictates the dismissal of Plaintiff's federal takings claim.[4]

**D.   Plaintiff's State-Law Tort Claim Also Is Barred by Eleventh Amendment Immunity.**

Finally, in Count 3 of her complaint, Plaintiff has asserted a state-law tort claim against Defendant Stoddard, alleging that he acted with gross negligence by making "false, misleading, incomplete and untimely representations to Plaintiff" concerning her retiree healthcare benefits.  (Complaint at ¶¶ 36-38.)  This claim,

---

[4]In addition, Plaintiff's takings claim likely is subject to dismissal on the merits for lack of an allegation that Defendant Stoddard, acting in his official capacity on behalf of a state agency, took control of Plaintiff's property "and put[] it to public use."  *Guba v. Huron County,* No. 14-3022, 600 F. App'x 374, 386 (6th Cir. Jan. 22, 2015).

like the others in Plaintiff's complaint, has been asserted against Defendant Stoddard in his official capacity only.

It readily follows that this claim is barred in its entirety by Eleventh Amendment immunity. The Sixth Circuit has emphasized that "the States' constitutional [Eleventh Amendment] immunity from suit prohibits *all* state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature." *Ernst,* 427 F.3d at 368. Moreover, as explained earlier, a claim asserted against a state employee in his official capacity is functionally equivalent, for purposes of Eleventh Amendment immunity, to a claim asserted against the state itself. *See Graham,* 473 U.S. at 166, 105 S. Ct. at 3105; *Cady,* 574 F.3d at 342. The sole exception to this rule — *i.e.,* an official-capacity claim for prospective injunctive relief under *Ex parte Young* — does not apply to claims alleging non-compliance with state law. *See Ernst,* 427 F.3d at 368-69; *Freeman v. Michigan Department of State,* 808 F.2d 1174, 1179 (6th Cir. 1987). Consequently, Plaintiff's state-law claim is subject to dismissal.[5]

---

[5]In light of the Court's conclusion that Plaintiff's claims are subject to dismissal either for failure to state a claim or on Eleventh Amendment grounds, the Court need not address Defendant's contention that Plaintiff's claims are barred by claim preclusion. The Court also need not decide whether, as Defendant urges, the proceedings before this Court should be stayed under the authority of *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746 (1971), while Plaintiff's state court suit remains pending.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's July 17,

2015 motion to dismiss (docket #7) is GRANTED.

<div style="margin-left: 40%;">

s/Gerald E. Rosen_____
United States District Judge

</div>

Dated:  June 15, 2016

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on June 15, 2016, by electronic and/or ordinary mail.

<div style="margin-left: 40%;">

s/Kelly Winslow for Julie Owens_____
Case Manager, (313) 234-5135

</div>